**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JOSH VANSLYCK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 16 C 11000** |
| **v.** | ) | |
| | ) | **Magistrate Judge Finnegan** |
| **GOJET AIRLINES, LLC,** | ) | |
| **TRANS STATES HOLDINGS, INC.,** | ) | |
| **and RANDY BRATCHER** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Josh VanSlyck brings this two-count action against his former employer, Defendant GoJet Airlines, LLC ("GoJet"), its parent company, Trans States Holdings, Inc. ("TSH"), and its Director of Operations and former Chief Pilot, Randy Bratcher ("Defendants"). Plaintiff, a former GoJet pilot, alleges that Defendants violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), by refusing his request for a modified schedule and refusing to return him to work when requested, and discriminating against him in retaliation for his assertion of rights under the FMLA by withdrawing a promised promotion and then discharging him (Count I). Plaintiff also alleges that Defendants violated the Americans with Disabilities Act, 42 U.S.C. § 1201 *et seq.* ("ADA"), by refusing to accommodate his alleged disability (anxiety) and discharging him due to his disability and in retaliation for exercising his rights under the ADA (Count II).[1]

---

[1] After the parties consented to the jurisdiction of a magistrate judge, the case was assigned to this Court. (Docs. 22, 24).

As a GoJet pilot, Plaintiff was a member of the International Brotherhood of Teamsters Airline Division ("IBT"), and the terms of his employment were governed by a Collective Bargaining Agreement ("CBA") between GoJet and the IBT. (Doc. 19-1, ¶¶ 5-6). Based on this, Defendants now move for summary judgment, asserting that certain of Plaintiff's claims require interpretation and/or application of the CBA, and are therefore subject to mandatory arbitration under the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.* and should be dismissed. (Doc. 37, at 1). They also ask that Plaintiff's remaining claims – that do *not* depend on an interpretation of the CBA – be dismissed and arbitrated (or at least stayed), since they arise out of the same facts and are thus related to the arbitrable issues. (Doc. 41, at 1-2). Plaintiff opposes both dismissal and a stay. (Doc. 42).

For the reasons explained below, Defendants' motion for summary judgment is granted in part and denied in part. The Court agrees that certain of Plaintiff's claims (particularly those alleging that Defendants violated the ADA and FMLA by refusing to grant him a modified work schedule and refusing to return him to work) are subject to mandatory arbitration under the RLA. While the Court does not agree that Plaintiff must also arbitrate his remaining claims, this action will be stayed while the arbitration proceeds, and no claims will be dismissed at this time.[2]

---

[2] Defendants initially filed a motion to dismiss (Doc. 18) that was then converted into one for summary judgment by this Court's Order dated May 19, 2017 (Doc. 33). At that time, the Court granted Plaintiff's unopposed request to extend the briefing schedule and allowed each side to file an additional brief and any supporting materials. (Doc. 35). After reviewing those briefs, the Court then invited a further round of briefing on the issue of whether, in the event the Court agreed that some of Plaintiff's claims require arbitration, dismissal or stay of the action would be appropriate. (Doc. 39). Accordingly, the Court has considered and refers herein to both sides' briefs and supporting materials filed in connection with Defendants' original Motion to Dismiss (Docs. 18, 19, 30, 31), their supplemental summary judgment briefs (Docs. 36, 37), and their supplemental briefs on the appropriateness of a stay (Docs. 41, 42). The facts and evidence

<u>**BACKGROUND**</u>

For purposes of deciding the pending motion for summary judgment, the determinative issue is whether resolution of Plaintiff's FMLA and ADA claims requires interpretation and/or application of any provisions of the CBA between Go-Jet and the IBT. Given this, the relevant background includes not only the circumstances surrounding Plaintiff's FMLA leave, attempt to return to work, and eventual discharge, but also the parties' specific claims and defenses and any CBA provisions that are thereby implicated. To avoid redundancy, some of this background (e.g., the language of the CBA provisions) is summarized only later in the Opinion in conjunction with the Court's analysis of the issues.

**I.     Plaintiff's FMLA Leave, Attempt to Return to Work, and Discharge**

Plaintiff began working as a GoJet pilot in February 2009 and continued in that position until GoJet terminated his employment in December 2014. (Doc. 5, ¶¶ 10, 17; Doc. 19-1, ¶¶ 4, 18-27). His termination followed 12 weeks of FMLA leave from which Plaintiff never returned to work despite his request to do so. (Doc. 5, ¶¶ 13-17; Doc. 19-1, ¶¶ 20-27). Plaintiff requested the FMLA leave on approximately August 21, 2014. (Doc. 5, ¶ 12; Doc. 30-1, ¶ 2). Unlike prior leave requests for a specified number of days off, this time Plaintiff asked for what he terms "intermittent FMLA leave," whereby he would receive "less overnight time" and his out of town flying "trips" (a series of flights away from a pilot's home base) would be limited to no more than four days away from home. (Doc. 30-1, ¶ 2). In addition, rather than make this request for a set number of

---

discussed herein are drawn from those materials and, as required for a motion for summary judgment, are construed in the light most favorable to Plaintiff, with all reasonable inferences drawn in his favor and no disputed facts resolved against him. *Richards v. U.S. Steel*, 869 F.3d 557, 562 (7th Cir. 2017). Unless indicated otherwise, the facts discussed herein are undisputed.

days or weeks, Plaintiff requested this limitation on his schedule for the full year from August 17, 2014 through August 17, 2015. (Doc. 19-4, ¶¶ 5-7, citing Doc. 16).

While Plaintiff originally based this request on a need "to care for the serious health conditions of his wife" (Doc. 5, ¶ 12; Doc. 19-4, ¶ 4), the FMLA paperwork that Plaintiff submitted instead cited his own mental health condition. (Doc. 16). This form (entitled "Certification of Health Care Provider for Employee's Serious Health Condition") included a certification from Plaintiff's Clinical Psychologist stating: (1) Plaintiff had been diagnosed with Generalized Anxiety Disorder, (2) he had "symptoms of anxiety and possibly depression," (3) his "anxiety becomes severe after a 4-day period away from family and home," (4) he was likely to experience "flare-ups" and "related incapacity" 1-2 times per month lasting a day to 48 hours per episode, and (5) the probable duration of his condition was "at least one year." (Doc. 16). The certification also said the anxiety condition had commenced on July 16, 2014, which (according to Defendants) coincided with Plaintiff's prior FMLA leave to care for his son (on July 15 and 16, 2014). (*Id.*; Doc. 37, at 5; Doc. 37-1, ¶ 5).

After receiving Plaintiff's leave request, GoJet consulted its independent medical expert (Dr. Matthew Miriani) and then decided to ground Plaintiff until further evaluation could be completed. (Doc. 19-1, ¶ 19). On September 4, 2014, GoJet placed Plaintiff on "full-time FMLA leave for the statutory maximum of 12-weeks effective August 31, 2014." (*Id.* at ¶ 20; Doc. 19-6; Doc. 30, at 2). As discussed in more detail later, GoJet asked Plaintiff to submit to an examination with Dr. Miriani who in turn requested information from Plaintiff's own medical examiner. (Doc. 19-1, ¶ 21; Doc. 19-3). While Plaintiff was in the process of obtaining that information (which he says he obtained by December 10,

2014), GoJet terminated him on December 2, 2014, stating that he had exhausted all available FMLA leave, failed to provide sufficient documentation allowing his return to work, and failed to request medical leave under the CBA.  (Doc. 19-3; Doc. 19-1, ¶ 27).

Plaintiff alleges that Defendants "initially granted" his request for "intermittent FMLA leave" and offered him a promotion that would have resulted in a transfer to GoJet's company headquarters which Plaintiff accepted.  (Doc. 5, ¶¶ 12-13; Doc. 30, at 2; Doc. 19-6).  Defendants then allegedly revoked the promotion and "forced him to take a continuous block of FMLA leave, even though Plaintiff did not request such leave and did not need such leave."  (Doc. 5, ¶ 13).  Plaintiff further alleges that Defendants thereafter refused to allow him to return to work as requested, based on the "false assumption" that he was "medically unfit to return to work due to his wife's serious health conditions," although he was "medically able to perform his job."  (*Id*. at ¶¶ 15-17).  As a result, Plaintiff alleges, his "forced FMLA leave" expired on or about November 17, 2014.  (*Id*.).  A week later, on November 25, 2014, Plaintiff allegedly complained to Defendants that he was being discriminated against for having asserted rights under the FMLA.  (*Id*. at ¶ 16).  As noted, one week later GoJet terminated Plaintiff's employment on December 2, 2014.

## II.    Plaintiff's Federal Claims

Plaintiff contends that the above-described actions – revoking his promotion, forcing him to take a block of FMLA leave (as opposed to "intermittent" leave), refusing to allow him to return to work, and discharging him – violated the FMLA.  (*Id*. at ¶ 22).  Additionally, in support of his ADA claim, Plaintiff further alleges that throughout these events he was suffering from the disability of anxiety or, alternatively, GoJet and TSH regarded him as suffering from a disability (*id*. at ¶ 26), but they refused to accommodate

his requests for a modified schedule and refused to engage in the interactive process in response to his requests for an accommodation. (*Id.* at ¶ 27). Plaintiff's ADA claim also alleges that he was nevertheless "able to perform the essential functions of his position with or without an accommodation" (*id.* at ¶ 28), and his performance had met GoJet's and TSH's "legitimate expectations" (*id.* at ¶ 31), yet they refused to accommodate his disability and instead discharged him because of it, and in retaliation for his assertion of rights under the ADA. (*Id.* at ¶ 30).

## DISCUSSION

It is well settled that the RLA requires mandatory arbitration of so-called "minor disputes," which are those requiring "interpretation or application" of a CBA. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 831-32 (7th Cir. 2014). Such disputes are thus "preempted" (if raised in a state claim) or "precluded" (if raised in a federal claim). *Wisc. Cent., Ltd. v. Shannon*, 539 F.3d 751, 757-58 and n.2 (7th Cir. 2008).[3] Neither party disputes these principles; instead, they dispute whether Plaintiff's claims do, in fact, require interpretation or application of the CBA. Defendants contend that Plaintiff's FMLA and ADA claims alleging interference with or failure to accommodate his request for "intermittent FMLA leave" (the "interference/failure-to-accommodate" claims) and his FMLA claim alleging refusal to allow him return to work after his continuous FMLA leave expired (the "return-to-work" claim) require interpretation of the CBA and are thus subject to mandatory arbitration. (Doc. 19, at 9-14). Plaintiff contends those claims "do not require reference to the CBA" and are thus not precluded. (Doc. 30, at 5-14). The Court now examines these arguments in relation to the parties' specific claims and defenses.

---

[3] Although the parties use the term "preemption," the Court refers to "preclusion," since Plaintiff's claims here are federal.

## I.     Plaintiff's Interference and Failure-to-Accommodate Claims

Defendants contend that Plaintiff's FMLA interference claim requires interpretation of the CBA because Plaintiff's requests for a modified schedule (trips no longer than four days) would have violated various provisions of the CBA, particularly those in Section 8. (Doc. 19, at 4, 9; Doc. 31, at 5; Doc. 37, at 5).  Similarly, Defendants contend that Plaintiff's ADA failure-to-accommodate claim also requires interpretation of the CBA because Plaintiff must prove that his requested accommodation was reasonable under the ADA, which in turn requires him to prove that the accommodation did not violate the CBA (since an accommodation that does so is per se unreasonable).  (Doc. 37, at 3).  Plaintiff disagrees, and also advances other arguments in opposition to mandatory arbitration that the Court considers below.

### A.     Applicability of the CBA's Provisions

Section 8 of the CBA governs pilot scheduling and establishes an electronic bidding system (the "PBS") through which GoJet pilots bid for their monthly schedules (also called "lines").  (Doc. 19-1, ¶¶ 7-9).  Under Section 8.B.5, lines are then awarded based on a pilot's seniority status as defined in Section 11 of the CBA.  (*Id.* at ¶¶ 8-10; Doc. 19-2, at § 8.B.5:  "All bids shall be awarded in accordance with seniority of eligible bidders.").  Based on this,  Defendants argue that Plaintiff's request for a year's worth of lines with trips limited to 4 days violated Section 8.B.5's requirement to award lines in accordance with seniority, since it required "guaranteeing" Plaintiff a schedule including only shorter trips "even if he did not have the seniority to be granted such a schedule." (Doc. 37, at 5; Doc. 37-2, ¶ 6).

Plaintiff disputes that his request for such a modified schedule violated Section 8.B.5 of the CBA, or even implicated the seniority provisions of the CBA or its PBS.

Rather, Plaintiff argues, his request simply required GoJet to "assign a reserve pilot to cover the time off" after Plaintiff was awarded his monthly lines per seniority, as it did with his prior requests for leave. (Doc. 36-1, ¶ 3). In other words, Plaintiff contends that GoJet could have accommodated his request for intermittent leave by modifying any longer trip to which he was assigned into a four-day trip *after* his schedule was awarded, and then using reserve pilots to fly any subsequent day. According to Plaintiff, this is how his prior requests for FMLA leave were handled – he was awarded his monthly line per seniority, and when his leave was approved, "those parts of [his] awarded line were removed and assigned to a reserve pilot until [Plaintiff] returned from leave to pick up the remaining trips." (*Id.* at ¶ 4).

Defendants counter that Section 8.B.3 requires a pilot to "be eligible" to perform an "entire assignment" in order to have it awarded in the first place. (Doc. 37, at 5; Doc. 37-2, ¶ 5; Doc. 19-2, § 8.B.3). Defendants further note that CBA Section 14.E provides that a Pilot "who is unable to continue work due to illness or injury after a trip has commenced will be relieved from duty and will be returned to his base." (Doc. 37, at 5; Doc. 37-2, ¶¶ 4-5; Doc. 19-2, § 14.E). Thus, according to Defendants, GoJet was prohibited from agreeing to shorten Plaintiff's longer trips for a full year, since that would require awarding Plaintiff trips that he had already claimed he was not eligible to perform due to illness, in violation of Section 8.B.3. (Doc. 37, at 5; Doc. 37-2, ¶ 6).

Defendants also insist that Plaintiff's prior FMLA leaves involved no such accommodation. According to a Declaration from the base manager responsible for administering Plaintiff's FMLA leave in 2014 (Tracey Ryan), these prior FMLA leaves were: August 27 through September 30, 2011 (parental leave); October 1 through November 1, 2012 (birth of child); June 3 and 4, 2014, and July 15 and 16, 2014 (care for

son).  (Doc. 37-1, ¶¶ 5, 7, and Exs. 1 and 2 thereto).  Mr. Ryan's Declaration asserts that Plaintiff's requests for leave in June and July 2014 occurred after Plaintiff had already bid on and been awarded his monthly schedules, based on his son's medical issues that arose after those schedules were awarded.  (Doc. 37-1, ¶¶ 5-6).  Such approvals, Defendants maintain, did not violate Section 8.B.3 of the CBA because they did not require awarding Plaintiff any line that he had *beforehand* claimed he was ineligible to perform.  (Doc. 37, at 5).  Defendants also explain that Plaintiff's approved leave from August 27 through September 30, 2011 (for parental leave), and from October 1 through November 1, 2012 (for the birth of a child) did not require GoJet to guarantee Plaintiff a continuing modification of his monthly lines, but instead "resulted in his simple removal from the schedule" for these set periods.  (*Id.*).  None of these requests, Defendants say, "involved intermittent leave or a prospective request for an ongoing modified schedule over the next year," such as Plaintiff sought in August of 2014.  (*Id.*).

This Court is persuaded that resolution of this dispute would require interpretation of the CBA.  Regardless of whether other pilots might have been assigned to cover the unperformed portion of any of Plaintiff's longer trips wholly outside of the seniority-based scheduling process, Defendants' defense under Sections 8, 11, and 14 of the CBA reasons that those sections precluded Go-Jet from agreeing to such a year-long arrangement in the first place.  While Plaintiff may disagree, this dispute qualifies as a minor dispute subject to mandatory arbitration under the RLA.  *Brown v. Illinois Cent. R.R.*, 254 F.3d 654, 668 (2001) (claim based on federal statute is precluded by the RLA when it "requires interpretation of a CBA which could conclusively resolve the claim").

Plaintiff's companion argument – that GoJet's allowances of his prior leave requests demonstrate that the CBA posed no barrier to the scheduling accommodation

9

he requested in 2014 – is similarly unavailing. According to Plaintiff, "even assuming, *arguendo*, there was a conflict between [Plaintiff's] request for intermittent leave as an accommodation and the provisions of Defendants' seniority-based system as to line assignments, [Plaintiff] is entitled to show that in practice exceptions are made such that his request for an accommodation, in light of those exceptions, was a reasonable one." (Doc. 36, at 11). Putting aside whether any past practice might be relevant here, the assertion of such a practice does not obviate the need to interpret the CBA. So while Plaintiff may be entitled to present evidence of past practice in response to Defendants' arguments under the CBA, this Court agrees with Defendants that "it is for the System Board to evaluate this past practice in the context of CBA interpretation; not the Court." (Doc. 37, at 6, citing *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 639 (8th Cir. 2001)). *See also Bhd. of Maint. of Way Employees v. Union Pacific R.R. Co.*, No. 03 C 1639, 2003 WL 21673930, at *12 (N.D. Ill. Jul. 16, 2003) ("To determine whether a dispute can be resolved by interpreting an existing agreement, therefore making it a minor dispute, the court may look beyond the explicit terms of the written agreement.… Thus, when a court interprets a collective bargaining agreement, the court must interpret the agreement to include recognized past practices that establish the 'course of dealing between the parties.'… In this sense, a past practice may act as a binding unwritten term of the parties' collective bargaining agreement."), *aff'd*, 358 F.3d 453 (7th Cir. 2004); *Kwasnik v. Nat'l R.R. Passenger Corp.*, No. 96-1933, 1997 WL 109977, at *4 (N.D. Ill. Mar. 7, 1997) (disputed past practice under CBA gave rise to minor dispute requiring interpretation of CBA in light of disputed past practice).[4]

---

[4]     While it is not for this Court to resolve, the premise for Plaintiff's contention – that in practice, exceptions have been made for him to seniority-based scheduling – is suspect. The

## B. Plaintiff's Assertion of Disputed Issues of Fact

Plaintiff also argues that Defendants' reliance on the seniority-based scheduling required by Section 8.B.5 of the CBA raises a disputed issue of fact precluding summary judgment. Specifically, Plaintiff contends that "Defendants cannot state with certainty" that granting Plaintiff's request for shorter trips that he "may or may not have received based on his actual seniority" would have conflicted with the seniority rights of other pilots, only that it would have "potentially conflicted with those rights." (Doc. 36, at 9). Such "potentiality of a conflict," Plaintiff argues, "in reality is Defendants' concession that there is an issue of fact as to whether they do in fact conflict – *i.e.* in certain circumstances they might conflict and [in] certain circumstances they might not." (*Id.*).

But Plaintiff did not ask GoJet to accommodate his intermittent leave request only insofar as the CBA's seniority-based bidding system allowed this. Rather, he asked GoJet to **agree in advance for the next year** that he would fly trips no longer than four days **regardless** of whether this was allowed under the CBA's seniority-based scheduling process. Defendants insist that this accommodation would have required an agreement at the outset to violate the CBA, *i.e.*, to award and then shorten longer trips for which Plaintiff was not eligible (in violation of Section 8.B.3, as explained above) or to award only shorter trips regardless of the required outcome of the bidding process (in violation of the seniority-based scheduling required by Section 8.B.5).

---

record suggests that Plaintiff's prior leave requests differed in important respects from the request for a full year of shorter flying trips at issue here; the prior requests were for specified durations that did not affect a full year of future line assignments and apparently were unaccompanied by a certification that the accommodation was necessitated by Plaintiff's incapacity to fly longer trips during the period at issue.

That the accommodation might not have resulted in an actual violation of any pilot's seniority rights (a remote possibility) is beside the point. According to Defendants, it was not merely the probability of a prohibited outcome that prevented GoJet from accommodating Plaintiff's request; it was the inability to **guarantee prospectively** that it would disregard the requirements of multiple sections of the CBA for the next year. (Doc. 37, at 5: "Plaintiff's requested accommodation violates Sections 8, 11, and 14 of the CBA by, among other things, affording Plaintiff super-seniority and guaranteeing that he would never fly a four-day trip even if he did not have the seniority to be granted such a schedule."). The bottom line is this: Plaintiff asked GoJet to agree in advance not to follow the seniority-based scheduling process required by the CBA, and Defendants maintain that the CBA prohibited such an accommodation. Conversely, Plaintiff maintains that the seniority-based scheduling process required by the CBA would not have prevented GoJet from promising to limit his trips to no longer than 4 days for a full year. Far from precluding summary judgment, such a dispute regarding the parties' respective rights and obligations under the CBA reinforces the conclusion that this is a minor dispute subject to mandatory arbitration. *See Kwasnik*, 1997 WL 109977 (disagreements over interpretation of CBA insufficient to withstand summary judgment of preemption, and instead "actually support" such a motion, because "actions are preempted when their adjudication would entail the interpretation of a collective bargaining agreement").

C.     **Seventh Circuit Decisions in *Brown* and *Carlson***

Finally, Plaintiff argues that mandatory arbitration of his interference and failure-to-accommodate claims is foreclosed by the Seventh Circuit's decisions in *Brown v. Ill. Central R.R. Co.*, 254 F.3d 654 (7th Cir. 2001), and *Carlson v. CSX Transp., Inc.*, 758

F.3d 819 (7th Cir. 2014). But in this Court's view, both decisions support mandatory arbitration under the circumstances presented here.

As even Plaintiff acknowledges, *Brown* held that a claim "which clearly required reference to the CBA for its resolution was preempted by the RLA." (Doc. 36, at 8). And as explained above, Plaintiff's interference and failure-to-accommodate claims plainly require reference to the CBA. But Plaintiff nevertheless points to *dicta* in *Brown* cautioning that an independent federal claim "is precluded by the RLA only if it can be dispositively resolved through an interpretation of a CBA," and thus, "only when a provision of the collective bargaining agreement is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of the collective bargaining agreement." (Doc. 36, at 9, quoting *Brown*, 758 F.3d at 668). From this, Plaintiff argues that Defendants' assertion of a "potentially" conflicting provision in the CBA is insufficient to require arbitration of Plaintiff's ADA and FMLA-based claims. (*Id.*).

But again, Defendants do not argue a merely potential conflict between Plaintiff's intermittent leave request and the CBA; they contend that granting Plaintiff's request to have longer trips shortened after the fact would violate Sections 8.B.3 and 14.E of the CBA, and granting his request to be awarded shorter trips regardless of seniority would violate Sections 8.B.5 and 11 of the CBA – not potentially, but absolutely. In any event, the question is not whether these provisions actually did (or do) prohibit Plaintiff's leave request, but rather, whether an interpretation of the CBA would "dispositively resolve" these defenses to Plaintiff's interference and failure-to-accommodate claims. Although Defendants may not ultimately prevail on these defenses (this Court expresses no view on that question), the Court is persuaded that an interpretation of the CBA would "dispositively resolve" these defenses to Plaintiff's

13

interference and failure-to-accommodate claims. For this reason, the claims are minor disputes subject to mandatory arbitration.

Plaintiff's reliance upon *Carlson* is similarly unavailing. As Plaintiff explains, *Carlson* involved a Title VII discrimination claim based on the defendant's refusal to reinstate the plaintiff in a position for which the defendant maintained she was not qualified under a governing CBA. (Doc. 36, at 11-12, citing *Carlson*, 758 F.3d at 832-33). But Plaintiff overlooks the distinguishing fact that the plaintiff in *Carlson* asserted no right to be reinstated in that position under the CBA. *Carlson*, 758 F.3d at 833 ("Carlson does not claim that she was entitled to a particular job under the collective bargaining agreement."). Rather, the plaintiff alleged that she was denied reinstatement, not because she was unqualified under the governing CBA, but due to gender-based discrimination and in retaliation for protected activity. *Id.* As a result, the court found no dispositive issue that depended "on an interpretation of the collective bargaining agreement," unlike *Brown*, where "the heart of the dispute" was "'a disagreement over the interpretation' of a collective bargaining agreement." *Id.* (distinguishing *Brown*, 254 F.3d at 664). Here, by contrast, Plaintiff's interference and failure-to-accommodate claims allege that Defendants wrongly refused Plaintiff's request for a year's worth of limited-duration flying trips, Defendants contend that several provisions in the CBA governing Plaintiff's employment prohibited GoJet from granting that request, and Plaintiff disputes those contentions. Resolution of Plaintiff's interference and failure-to-accommodate claims therefore necessitate the interpretation of those CBA provisions, and that must occur in an arbitration before the designated body.

In so holding, the Court is mindful that, as in *Carlson*, Plaintiff similarly alleges certain adverse employment decisions (a revoked promotion and termination of his

employment) motivated by discriminatory animus and in retaliation for protected activity. (Doc. 5, ¶¶ 22, 30). But Defendants do not argue that those claims are subject to mandatory arbitration, and (as explained below) the Court has neither ordered their arbitration nor dismissed them. The same is true of Plaintiff's allegation that Defendants discriminated against him "by refusing to accommodate his disability." (*Id.* at ¶ 30). To the extent Plaintiff seeks to argue later that Defendants are liable for any such discrimination *regardless* of the CBA's requirements (as in *Carlson*), those claims are unaffected by this Court's preclusion ruling. *See Carlson*, 758 F.3d at 833 ("a claim under an independent law covering the same subject matter is not precluded"); *Brown*, 254 F.3d at 668 ("Brown's claim would not have been precluded if either the parties did not dispute the interpretation of the relevant CBA provisions (and Brown had merely argued that he was entitled to a certain reasonable accommodation under the ADA *notwithstanding* anything to the contrary in the CBA") (emphasis in original). But as for Plaintiff's interference and failure-to-accommodate claims – *i.e.*, those alleging that Defendants wrongly refused his particular request for a year-long schedule of limited-duration flying trips – those claims require resolution of Defendants' contention that several provisions of the CBA precluded such an accommodation and Plaintiff's contrary contention that they did not. As such, those claims are subject to mandatory arbitration and thus are precluded under the RLA.

## II.  Plaintiff's Return-to-Work Claim

Plaintiff's return-to-work claim is precluded for the same reason. As noted, this claim alleges that GoJet violated the FMLA by not allowing him to return to work after his continuous block of FMLA leave expired. (Doc. 5, ¶ 22). Defendants observe that Plaintiff can only prevail if he proves that they violated the return-to-work provisions of the FMLA,

29 U.S.C. § 2614(a)(4), which expressly allow an employer to adopt more stringent return-to-work requirements through a CBA. (Doc. 37, at 2). Since Go-Jet did so, Defendants argue that Plaintiff must prove they violated the return-to-work provisions of the GoJet CBA (summarized below), which necessarily requires the interpretation and application of these provisions. (*Id.*).

### A. Fitness for Duty Requirements under CBA and FMLA

In support of their position, Defendants point to Sections 22 and 15 of the GoJet CBA. Section 22.A allows GoJet to require a fitness-for-duty examination with a company-designated medical expert if "the Company believes that the Pilot's medical condition is impaired and believes the Pilot may not be fit to fly as a result thereof," and further, to require a report of such examination that includes "a determination as to whether the Pilot is able to perform Pilot duties, from a medical standpoint." (Doc. 31, at 9; Doc. 19-1, ¶ 13, citing Doc. 19-2, § 22.A.1 and 22.A.3). According to Defendant Bratcher's Declaration, "[u]nder established practice, GoJet requires a Section 22 fitness-for-duty exam of every pilot returning from a medical leave on account of the employee's own medical condition." (Doc. 19-1, ¶ 14). In addition, Section 15 provides that a pilot on unpaid medical leave of absence "may be required to provide physician's statements verifying the medical disability and/or approving a return to normal duties." (Doc. 19, at 4; Doc. 19-1, ¶ 12; Doc. 19-2, § 15). Finally, Section 22.C.6 allows GoJet to remove a pilot from pay status if he "refuses to submit to a medical examination requested by the Company, or causes delay in the process." (Doc. 37, at 9; Doc. 19-2, ¶ 22.C).

Plaintiff does not dispute GoJet's right to insist upon a fitness-for-duty examination before allowing a pilot to return to work following a medical condition, or GoJet's right to insist on a fitness-for-duty examination in this case. But Plaintiff does dispute that GoJet's

assertion of such a right requires any interpretation or application of the CBA in this case. Rather, Plaintiff argues, the FMLA itself provides the necessary instruction, since (according to Plaintiff) it "has an identical fitness for duty requirement" in 29 C.F.R. § 825.312. (Doc. 36, at 14). But as Plaintiff's quotation of this regulation reveals, in addition to establishing a default return-to-work procedure in the absence of another controlling policy, the regulation also expressly acknowledges an employer's right to implement its own "uniformly-applied policy or practice that requires all similarly-situated employees . . . to obtain and present certification from the employee's health care provider that the employee is able to resume work." (Doc. 36, quoting 29 C.F.R. § 825.312(a)). Indeed, the same regulation further provides: "If . . . the terms of a collective bargaining agreement govern an employee's return to work, those provisions shall be applied." 29 C.F.R. § 825.312(g). And Section 2614 of the FMLA reinforces that proposition. 29 U.S.C. 2614(a)(4) ("nothing in this paragraph shall supersede a valid State or local law or a collective bargaining agreement that governs the return to work of such employees"). Accordingly, there is little room for debate that the return-to-work provisions in the CBA apply in this case.

### B. Interpretation/Application of CBA's Return-to-Work Provisions

The record demonstrates that the CBA provisions identified above are asserted by the parties and require interpretation and application to Plaintiff's return-to-work claim. Defendants point to evidence that GoJet asked Plaintiff to submit to an examination with GoJet's Dr. Miriani so the doctor could evaluate Plaintiff's fitness for duty before he could return to work following his FMLA leave, and Dr. Miriani in turn requested further information from Plaintiff's own physicians. (Doc. 37, at 8-9; Doc. 19-1, ¶¶ 21-23; Doc. 19-3). According to Defendants, Section 22 of the CBA gave them the right to require

Plaintiff to see a company physician (Dr. Miriani) before allowing him to return to work, rather than accept a note from Plaintiff's own doctor. (Doc. 37, at 8).

Defendants also point to the grievance submitted by the IBT on Plaintiff's behalf, which alleged Defendants' violation of Section 22, although for different reasons. (*Id.* at 9, n.4). According to the IBT, GoJet violated Section 22.A.1 "and related sections" when Dr. Miriani required Plaintiff to obtain further information from his own doctor, who then "determined that additional tests were necessary." (Doc. 19-3). This grievance also asserts that GoJet violated Section 22 by requiring Plaintiff to seek an examination from his own medical examiner when Dr. Miriani could have performed the examination himself. (*Id.*). And this position by Plaintiff in turn implicates other portions of Section 22. Specifically, Defendants argue that Plaintiff failed to cooperate with Dr. Miriani sufficiently to allow him to render an independent opinion, and further failed to provide the information that Dr. Miriani requested from Plaintiff's own physician. (Doc. 19, at 6-7). According to Defendants, under Section 22.C of the CBA, both alleged obstructions entitled GoJet to remove Plaintiff from pay status for failing to cooperate and delaying the process. (*Id.*; Doc. 37, at 8-9).

Plaintiff's IBT grievance disputes these contentions. The IBT argued that it was not Plaintiff who caused delay, but rather Dr. Miriani, who "chose to require [Plaintiff] to seek an examination from someone else," and then set an "inappropriate timeline" to complete it. (Doc. 19-3). And even then, Plaintiff claimed that he had "a confirmed, valid medical certificate enabling him to perform the required functions of his job as a pilot" by December 10, 2014, just eight days after GoJet terminated his employment for having failed to provide such information. (*Id.*). But Defendants maintain that Plaintiff had by then exhausted all available FMLA leave, failed to supply the information necessary under

Section 22 of the CBA to return him to work, and failed to justify a medical leave of absence under Section 15 of the CBA, placing him in an "unapproved leave status," resulting in the termination of his employment. (Doc. 19, at 6-7).

This Court is persuaded that Plaintiff's return-to-work claim requires interpretation and application of the CBA. Defendants rely on Section 22.A's provision allowing GoJet to require a fitness-for-duty examination with a company-designated physician, and Section 22.C's provision allowing GoJet to remove a pilot from pay status if he refuses to submit to a medical examination requested by the company or causes delay in the process. On the other hand, the grievance submitted on Plaintiff's behalf insisted that GoJet violated Section 22.A.1 "and related sections" when Dr. Miriani failed to complete the examination himself and instead required further information from Plaintiff's physicians on an unreasonable timeline. Given these facts and arguments, there is no question that Plaintiff's return-to-work claim, and Defendants' defenses to that claim, are dispositively grounded in multiple provisions of the CBA. As such, this claim requires mandatory arbitration and is therefore precluded under the RLA.

## III.  Plaintiff's Other Claims

Defendants acknowledge that Plaintiff's remaining claims (e.g., that Defendants withdrew a promised promotion and discharged him for discriminatory and retaliatory reasons – notwithstanding the CBA's requirements), do not require interpretation of the CBA and so are not precluded. (Doc. 37, at 1; Doc. 41, at 2; Doc. 5, ¶¶ 22, 30). They nevertheless argue that such claims should be arbitrated because they "arise out of the same facts" and are "fundamentally intertwined with the facts underlying" the claims subject to mandatory arbitration. (Doc. 41, at 1). Defendants therefore ask that all of Plaintiff's claims be dismissed and remitted to arbitration, even if the RLA would not

19

require it.  To support this request, Defendants rely primarily on the Seventh Circuit's decision in *Matthews v. Rollins Hudig Hall Co.*, 72 F.3d 50 (7th Cir. 1995).  According to Defendants, *Matthews* "found it appropriate to arbitrate claims related to arbitrable issues when they arise out of the same facts."  (Doc. 41, at 2).

The Court disagrees with this expansive reading of *Matthews*.  As Plaintiff argues, *Matthews* dealt with a broad arbitration clause in an employment agreement, and the clause required arbitration of all claims "relating to" a breach of that agreement.  72 F.3d at 53-55.  This broad language, *Matthews* held, was sufficient to require arbitration of claims alleging fraudulent inducement of the agreement itself, as well as those concerning the employment that was the subject of that agreement.  *Id.*  It goes without saying that the instant case involves no arbitration clause whatsoever, much less one so broad as the clause in *Matthews*.  And the Seventh Circuit has made clear that *Matthews* is limited to its facts, and thus wholly inapplicable here.  *See Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (distinguishing *Matthews* and other cases involving "a very broad, standard arbitration clause . . . requiring that 'all controversies and claims' either 'arising out of' or 'relating to' the contract would be settled by arbitration").

Even more problematic for Defendants' argument, the Seventh Circuit's decisions in the far more relevant context of RLA preclusion teach *against* compelling arbitration of claims that the RLA does not reach, even if they cover "the same subject matter."  *See*, *e.g.*, *Carlson*, 758 F.3d at 833-34 ("RLA preclusion, properly applied, does nothing more than keep disputes actually arising under a collective bargaining agreement out of court," but "a claim under an independent law *covering the same subject matter* is not precluded") (emphasis added); *Brown*, 254 F.3d at 668 ("an ADA claim should be permitted to go forward in all instances (even if the claim 'tangentially touches' a CBA, or if a CBA claim

*based on the same facts* has or is being arbitrated), unless, as here, it requires interpretation of a CBA which could conclusively resolve the claim") (emphasis added). Defendants have cited no authority justifying departure from this instruction in *Carlson* and *Brown*.[5]

Since the Court sees no basis for holding that Plaintiff's remaining claims (*i.e.*, those not subject to mandatory arbitration) should be arbitrated, the question that remains is whether or not to stay litigation of those claims in federal court until after the arbitration. Plaintiff opposes a stay, arguing that his non-precluded claims should proceed even before the arbitrable issues are decided. (Doc. 42, at 6). This Court disagrees. As the Seventh Circuit explained in *Tice v. American Airlines, Inc.*, 288 F.3d 313 (2002), a stay of non-arbitrable claims is not only appropriate, it is "the normal procedure when an arbitrable issue arises in the course of a federal suit." *Id.* at 318. This is so even where the plaintiff intends to pursue discrimination claims regardless of the arbitration's outcome. *Id.* at 317 ("When an employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract), and a statutory right to be free from discrimination, 'both rights have legally independent origins and are equally available to the aggrieved employee.' . . . The plaintiffs could, moreover—as in fact they have done—institute such a suit without waiting for completion of the arbitral process, *although the suit would have to be stayed pending that*

---

[5]      In the subsequent briefing requested by the Court on this issue, Defendants offered two additional decisions from other jurisdictions: *Toski v. McDonnell*, No. 91-112, 1994 WL 929756 (S.D. Fla. Jan. 31, 1994), and *Lalawai-Cruz v. Hawaiian Airlines*, 416 F. App'x 643, 646 (9th Cir. 2011). But in addition to being non-controlling, neither of these decisions supports Defendants' argument. That is because both *Toski* and *Lalawai-Cruz* held only that closely related claims were similarly preempted under the RLA (or dismissed for other reasons), not that all related claims must be arbitrated whether they are preempted or not.

*completion*.") (emphasis added) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974)).   Accordingly, regardless of Plaintiff's intention to pursue additional FMLA and ADA discrimination and retaliation claims when the arbitration required here is finished, as the Seventh Circuit held in *Tice*, "this suit would have to be stayed pending that completion." *Id.*

Moreover, as Defendants argue, there are also practical reasons to stay Plaintiff's non-arbitrable claims here.  Among other things, the parties and the Court would avoid duplicative discovery efforts by allowing any discovery necessary in the arbitration to proceed first.  The parties and the Court will also benefit from knowing the arbitrated meaning of the disputed CBA provisions before proceeding with Plaintiff's remaining claims, on which those provisions similarly (though not dispositively) bear.  It is also likely that the issues in this action will be substantially narrowed (if not resolved entirely) by the findings and rulings reached in the arbitration and any relief granted or denied as a result. And to the extent any portion of this case remains unresolved after the arbitration, the outcome of that proceeding may lend support to Plaintiff's remaining claims or detract from them.  But in either event, it is prudent to await the outcome of the arbitration before reaching such issues.  *See Miller v. Am. Airlines, Inc.*, No. 03 C 7756, 2004 WL 2203425, at *10 (N.D. Ill. Sept. 29, 2004) ("We see no basis for reaching those issues at the present time, without knowing whether the [CBA] will be interpreted in a way that makes those issues relevant to this case.").

Despite these benefits, Plaintiff argues that his non-precluded claims should proceed while the arbitration is ongoing, for three reasons:  (1) to avoid "possible claim and issue preclusion of matters that [Plaintiff] has the right to be resolved by a jury in a court of law," (2) to allow Plaintiff "the broad array of discovery available to him in

arbitration that he would have under federal law," and (3) to afford Plaintiff "the full panoply of remedies available to him under the FMLA and the ADA, such as punitive and compensatory damages, liquidated damages and attorney's fees." (Doc. 42, at 7). Each argument is unavailing. Indeed, Plaintiff's concern over "possible claim and issue preclusion" misperceives the need for a stay in the first place. As the Seventh Circuit observed in *Tice*, "only the arbitral boards convened under the aegis of the Railway Labor Act have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry." 288 F.3d at 318. It is precisely because "the arbitrators have exclusive jurisdiction over such disputes" that a stay is necessary to await their determination. *Id.*

To the extent any other issues are resolved by the arbitral board that either party maintains should not bind it in this litigation, that party may raise such issues after the arbitral board has spoken. The same is true of the relief that the board grants or denies. To the extent any party maintains that additional relief is available or precluded in this litigation, it may raise such issues after the arbitration is concluded, and may seek any additional non-duplicative discovery necessary to do so. This is not to say, however, that the Court's stay guarantees that Plaintiff will have additional claims or relief to pursue in this litigation after the required arbitration is concluded. Rather, this Court merely acknowledges, as the courts did in *Tice* and *Miller*, that Plaintiff should be spared the burden of filing a new lawsuit "should the arbitrators fail to resolve the entire controversy." *Tice*, 288 F.3d at 381; *Miller*, 2004 WL 2203425, at *8.[6]

---

[6]     While Plaintiff is not required to arbitrate the remaining claims, the parties certainly may agree to binding or non-binding arbitration of those claims if they so choose.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Doc. 40) is granted in part and denied in part on the terms stated above. Specifically, the motion is granted insofar as Plaintiff's claims alleging that Defendants violated the FMLA and ADA by refusing his request for a modified flying schedule from August 2014 thru August 2015, and violated the FMLA by refusing to return him to work when requested, are ordered to be submitted to mandatory arbitration under the RLA. The motion is denied insofar as it seeks arbitration of Plaintiff's remaining claims. The motion is also denied insofar as it seeks dismissal of any claims at this time. Instead this case is stayed pending completion of the foregoing ordered arbitration. The parties are directed to file a joint status report within 30 days of the completion of all required arbitration proceedings, stating their respective positions regarding the scope and scheduling of further proceedings in this action.

ENTER:

Dated: January 11, 2018

SHEILA FINNEGAN
United States Magistrate Judge